## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **CHARIS ENGINEERING, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CASE NO. 7:23-CV-84** |
| | § | |
| **BCCK ENGINEERING,** | § | |
| **INCORPORATED and BCCK** | § | |
| **HOLDING COMPANY,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Now comes, Charis Engineering, LLC ("Plaintiff" or "Charis") and files this Original Complaint against BCCK Engineering, Incorporated ("BCCK Engineering" or "Defendant") and BCCK Engineering Holding Company ("BCCK Holding" or "Holding Co. Defendant"), collectively ("Defendants"), and would show the Court as follows:

## SUMMARY OF ACTION

This is an action for unfair competition arising under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. Section 1051, *et seq.*, including Section 1125(a)(1), as well as tortious interference and business disparagement. Additionally, the Complaint includes a declaratory judgment claim of no misappropriation of trade secrets under 18 U.S.C. § 1836, *et seq.*, and no infringement of U.S. Patent Nos. 9,816,752 (the "'752 Patent"), 10,302,355 (the "'355 Patent") and 11,378,333 (the "'333 Patent") (collectively, the "Non-infringed Patents") under the Declaratory Judgment Act (28 U.S.C. § 2201).

## I.    PARTIES

1.    Charis Engineering, LLC is a Texas limited liability company with its headquarters and principal place of business located at 24 Smith Road, Suite 601, Midland, TX 79705.

2.    Defendant BCCK Engineering, Incorporated is a Texas corporation with a principal place of business at 2500 N. Big Spring Street, Suite 230, Midland, TX 79705, and may be served through its registered agent, Corporation Service Company *d/b/a* CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.

3.    Defendant BCCK Holdings Company is a Texas corporation with a principal place of business at 2500 N. Big Spring Street, Suite 230, Midland, TX 79705, and may be served through its registered agent, Corporation Service Company *d/b/a* CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136.

r

## II.    JURISDICTION AND VENUE

4.    This is an action for unfair competition arising under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. Section 1051, *et seq.*, including Section 1125(a), as well as tortious interference,  business disparagement, and declaratory judgment under the Declaratory Judgment Act (28 U.S.C. § 2201). Multiple claims in this action arise under 28 U.S.C §1331 as Federal Question claims as provided by 35 U.S.C. §1 *et seq.*, 18 U.S.C. §1836 *et seq.* and the Lanham Act.

5.    This Court has original jurisdiction under 18 U.S.C. § 1836(c) and 28 U.S.C. § 1338.

6.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b).  On information and belief, Defendants conduct business in this District, at least a portion of the claims alleged in this Complaint arise in this District, and at least some of the acts of business disparagement and tortious interference took place and are continuing to take place in this District.

7.    Defendants are subject to this Court's general and specific personal jurisdiction because Defendants have sufficient minimum contacts within the State of Texas and this District, pursuant to due process and/or the Texas Long Arm Statute because Defendants purposefully avail themselves of the privileges of conducting business in the State of Texas and in this District, and because Plaintiff's causes of action arise directly from Defendants' business transactions and other activities in the State of Texas and in this District.

## III.     BACKGROUND FACTS

8.      The allegations set forth in paragraphs 1 – 7 and the Summary of Action are incorporated herein.

9.      On October 17, 2022, Charis and Targa Resources, LLC ("Targa") entered into a Master Services Agreement ("MSA"), which purported to govern any future work performed by Charis for Targa. The MSA contained a "Termination for Convenience" provision that provided, *inter alia*, that Targa could terminate work under any contract at any time for any reason provided that it compensated Charis for any expenses and work completed through the time of termination.

10.     On February 28, 2023, Targa contacted Charis to gauge Charis's interest in submitting a quote for two Nitrogen Rejection Units ("NRU") at Targa's Buffalo and Greenwood facilities in Martin and Midland County, Texas, respectively.

11.     On March 9, 2023, Charis submitted two bids to Targa—one each for the Buffalo and Greenwood facilities.

12.     Defendant BCCK Engineering also submitted bids in response to Targa's request for proposals for the Buffalo and Greenwood facilities' NRU projects.

13.     Upon information and belief, Charis and BCCK Engineering were the only two companies that submitted bid proposals for Targa's Buffalo and Greenwood NRU projects.

14.     Based on conversations between Targa and Charis from March 9, 2023, through March 30, 2023, Charis submitted three revisions to its Buffalo and Greenwood bids. On April 10, 2023, Targa issued two purchase orders – one each for Buffalo and Greenwood – for work pursuant to the bids Charis submitted, confirming Targa's award of the Buffalo

and Greenwood contracts to Charis for construction of the NRUs at the Buffalo and Greenwood facilities.

15.     Based on the signed MSA, continued conversations with Targa, and the purchase orders, Charis issued invoices on April 10, 2023, to Targa pursuant to purchase orders under the MSA.

16.     After Targa awarded the contracts for Buffalo and Greenwood contracts to Charis, Defendants began alleging patent infringement and theft of trade secrets by Charis. Defendants alleged that Charis could not possibly complete its contractual obligations for the Buffalo and Greenwood NRU projects without infringing one or more of the Non-infringed Patents, using misappropriated trade secrets to complete the NRU projects, or both. Defendants directed these allegations to Targa's representatives.

17.     Upon information and belief, Defendants' communications with Targa included threats of litigation against Charis for patent infringement and trade secret misappropriation, claims which, if brought, created apprehension on behalf of Targa that Charis would not be able to fulfill its contractual obligations while simultaneously defending against Defendants' threatened litigation.

18.     Upon information and belief, Defendants never had access to any of Charis's proposals, plans, specifications, designs, or bids to Targa; therefore, Defendants had no credible basis upon which to make allegations against Charis for patent infringement, trade secret theft, or any other false allegation.

19.     On April 17, 2023, after learning of Defendants' tortious conduct, Charis contacted Defendants demanding that they cease and desist from continuing their attempts

to interfere with Charis's contract with Targa. Charis letter to Defendants is attached hereto as **Exhibit 1**.

20.    At the time of writing the letter to Defendants, Charis was aware of the '752 and '355 Patents, and informed Defendants that Charis not only respects intellectual property rights of others, but that it was confident in its non-infringement of these two patents.

21.    In response, on April 19, 2023, Defendants' counsel sent a letter to Charis alleging that Charis could not perform its contract with Targa without infringing the Non-infringed Patents. Defendants also levied allegations of trade secret misappropriation against Charis based on the fact that Charis's president and founder, Bryon Cheatham, previously worked at BCCK Engineering. That employment ceased in May 2017, almost six years prior to Defendants' allegations of trade secret misappropriation. Defendants' letter to Charis is attached hereto as **Exhibit 2**.

22.    In addition to the '752 and '355 Patents identified by Charis in its letter, Defendants identified the '333 Patent and a pending patent application, apparently as a basis to claim some future willful infringement by Charis. In their April 19, 2023, letter, Defendants stated plainly that "BCCK believes the claims of these patents and applications may be infringed by the systems and methods for removing nitrogen offered by Charis." Exhibit 2, pp. 1-2.

23.    Defendants were ultimately successful in their attempts to interfere with Charis's contracts with Targa and moving those contracts to themselves. On April 20, 2023, Targa exercised the "Termination for Convenience" clause of its MSA with Charis,

effectively terminating the contract with Charis for the Buffalo and Greenwood NRU projects.

## CLAIM I — UNFAIR COPETITION UNDER 15 U.S.C. § 1125 (LANHAM ACT § 43)

24.    The allegations set forth in paragraphs 1 – 23 and the Summary of Action are incorporated herein.

25.    By their statements to Targa regarding Charis's infringement of its patents and alleged misappropriation of trade secrets concerning Charis's performance of the NRU projects under contract between Targa and Charis, Defendants provided a misleading description of fact, or a false or misleading representation of fact (to wit, baseless allegations of patent infringement and trade secret misappropriation).

26.    Defendants' statements to Targa were made in commercial promotion, and misrepresented the nature, characteristics and qualities of Charis's services and commercial activities.

27.    Charis was damaged by Defendants' actions, because as a result of their unfair competition, Targa terminated its contract with Charis and awarded the contract to Defendant BCCK Engineering.

28.    Defendants' misrepresentations to Targa were willful.

29.    Under 15 U.S.C. § 1117, Plaintiff seeks Defendants' profits, damages sustained by Plaintiff since the termination of its contract with Targa, and costs of this action. Further, under the circumstances of this case, Plaintiff seeks trebling of the actual damages. Further, if the Court should find that the recovery based on profits is inadequate, plaintiff prays that the Court will in its discretion enter judgment for such a sum as the Court shall

find to be just.

30.     Because of the blatant and willful nature of Defendant's misrepresentations, Plaintiff submits this is an exceptional case and seeks its reasonable attorneys' fees.

## CLAIM II – TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIPS BY THE DEFENDANTS

31.     The allegations set forth in paragraphs 1 – 30 and the Summary of Action are incorporated herein.

32.     Charis had an ongoing business relationship with Targa based on the signed MSA and purchase orders submitted to Charis, and corresponding invoices submitted to Targa.

33.     Defendants were aware of Charis's substantial and ongoing business relationship with Targa, as well as its contractual relationship with Targa.

34.     Defendants willfully and intentionally deliberately misled Targa in order to divert that business away from Plaintiff—an effort that was ultimately successful—by falsely and/or with reckless disregard for the truth alleging Charis's successful bids to Targa would result in patent infringement and trade secret misappropriation.

35.     Defendants' communications with Targa regarding Charis's services were without any sufficient and/or demonstrable basis.

36.     Because of Defendants' tortious interference, Targa terminated its contract with Charis and awarded the contract for the same Buffalo and Greenwood NRU projects to BCCK and was the proximate cause of damages to Charis.

37.    Charis suffered actual damages in the form of lost profits from the contract with Targa.

38.    Defendants' conduct was willful and malicious.

39.    Charis further seeks exemplary damages for Defendants' tortious interference and actual malice as it relates to Defendants' tortious interference in the contractual relationship between Charis and Targa.

## CLAIM III – BUSINESS DISPARAGEMENT BY DEFENDANTS

40.    The allegations set forth in paragraphs 1 – 39 and the Summary of Action are incorporated herein.

41.    Defendants published to Targa false and disparaging information regarding Charis, including claims that Charis could not possibly complete its contractual obligations for the Buffalo and Greenwood NRU projects without infringing one or more of the Non-infringed Patents, using misappropriated trade secrets to complete the NRU projects, or both.

42.    Defendants made the accusatory statements to Targa knowing of the statements' falsity or with reckless disregard of their truthfulness.

43.    Defendants' statements were made with malice, because the sole intent was to steal the Targa NRU project contracts from Charis.

44.    Defendants' statements do not enjoy any privilege, because they were made with no credible or justifiable basis.

45.    Defendants' statements to Targa caused Targa to terminate its contract with Charis, resulting in special damages based on Targa's refusal to continue doing business with Charis, at least with respect to the Buffalo and Greenwood NRU projects.

46.     Defendants' disparaging statements resulted in actual damages to Charis, including at least the amount of Charis's lost profits from having the contracts terminated for the Buffalo and Greenwood NRU projects.

## CLAIM IV – DECLARATORY JUDGMENT OF NO MISAPPROPRIATION OF DEFENDANTS' TRADE SECRETS UNDER 18 U.S.C. § 1836, *et seq.*

47.     The allegations set forth in paragraphs 1 – 46 and the Summary of Action are incorporated herein.

48.     On April 19, 2023, Defendants accused Charis of misappropriation of trade secrets, stating plainly their belief that Charis is "violating BCCK's intellectual property rights based on Charis' improper use of BCCK's propriety [*sic*] and trade secret information." Exhibit 2, p. 1.

49.     As a result of Defendants' allegations, an actual and justiciable controversy exists between Charis and Defendants.

50.     Charis is not in possession of any information created by Defendants that is within the definition of "trade secret" as set forth in 18 U.S.C. § 1839(3), including any such information for which Defendants took reasonable measures to keep secret, or that derives independent economic value from not being generally nown to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or sue of the information.

51.     Charis is entitled to a judgment from this Court that it has not misappropriated any trade secret or proprietary information from Defendants.

## CLAIM V – DECLARATORY JUDGMENT NON-INFRINGEMENT OF U.S. PATENT NO. 9,816,752

52.    The allegations set forth in paragraphs 1 – 51 and the Summary of Action are incorporated into the foregoing.

53.    As a result of the allegations contained above regarding communications between Defendants and Targa, as well as the accusations by Defendants in their April 19, 2023, letter to Charis alleging infringement, an actual and justiciable controversy exists between Defendants and Charis concerning infringement of the '752 Patent.

54.    Representative claim 1 of the '752 Patent recites:

> I claim:
> 1. A method for removing nitrogen and for producing a methane product stream, the method comprising the steps of:
> 5    providing a first feed stream comprising nitrogen and methane;
> dividing the first feed stream into a second feed stream and a third feed stream in a first splitter;
> feeding the second feed stream and third feed stream into
> 10   a first fractionating column;
> separating the second feed stream and the third feed stream in the first fractionating column into a first overhead stream and a first bottoms stream;
> cooling the third feed stream upstream of the first frac-
> 15   tionating column through heat exchange with the first bottoms stream in a first reboiler external to the first fractionating column;
> feeding the first overhead stream into a second fraction-ating column comprising a condenser and a second
> 20   reboiler;

The '752 Patent (**Exhibit 3**), Col. 22, ll. 1-20.

55.     Claim 1 is the only independent claim of the '752 Patent. Charis's systems outlined and provided to Targa in response to Targa's requests for bids for the Buffalo and Greenwood projects do not, in any iteration (and among other things), cool a third feed stream upstream of the first fractionating column through heat exchange with the first bottoms stream in a first reboiler external to the first fractionating column." *Id.* Because Charis's proposed solution to Targa does not include this (and other features required to meet the limitations of the claims of the '752 Patent), Charis's proposed system cannot infringe any claim of the '752 Patent.

56.     Defendants have weaponized their patents with unfounded and baseless infringement accusations made not only to Charis, but third-party Targa, in a successful effort to undermine Charis's contractual relationship with Targa.

57.     Charis's NRU project bid to Targa does not, nor would it have upon completion, infringe, either directly or indirectly, any valid and enforceable claim of the '752 Patent; it is not the case that each and every limitation of the claims of the '752 Patent are present directly and/or indirectly, either literally or under the doctrine of equivalents, in the proposed Charis NRU systems.

58.     Charis is entitled to a judgment from this Court that it does not infringe any claim of the '752 Patent.

## CLAIM VI – DECLARATORY JUDGMENT NON-INFRINGEMENT OF U.S. PATENT NO. 10,302,355

59.     The allegations set forth in paragraphs 1 – 58 and the Summary of Action are incorporated herein.

60.     As a result of the allegations contained above regarding communications between Defendants and Targa, as well as the accusations by Defendants in their April 19, 2023, letter to Charis alleging infringement, an actual and justiciable controversy exists between Defendants and Charis concerning infringement of the '355 Patent.

61.     Representative claim 1 of the '355 Patent recites, in part:

> I claim:
>
> 20   1. A system for removing nitrogen and for producing a methane product stream from a first feed stream comprising nitrogen and methane, the system comprising:
>
> a first splitter wherein the first feed stream is divided into a second feed stream and a third feed stream;
>
> 25   a first fractionating column wherein the second feed stream and the third feed stream are separated into a first overhead stream and a first bottoms stream;
>
> a second fractionating column comprising a condenser and a second external reboiler, wherein the first over-
> 30   head stream is separated into a second overhead stream and a second bottoms stream;
>
> a third fractionating column wherein the second overhead stream is separated into a third overhead stream and a third bottoms stream;
>
> 35   a first heat exchanger for cooling the first feed stream upstream of the first splitter and for cooling the second feed stream upstream of the first fractionating column through heat exchange with the first bottoms stream and the first overhead stream, whereby the first bottoms
> 40   stream and first overhead stream are heated in the first heat exchanger;
>
> a first external reboiler for cooling the third feed stream upstream of the first fractionating column through heat exchange with the first bottoms stream upstream of the
> 45   first bottoms stream passing through the first heat exchanger;
>
> a second heat exchanger for cooling the first overhead

The '355 Patent (**Exhibit 4**), Col. 22, ll. 20-46.

62.     Claim 1 is not the only independent system claim of the '355 Patent. Independent claim 9 also recites a method claim, but that method likewise requires "cooling

the first feed stream upstream of the first splitter and colling the second feed stream upstream of the first fractionating column in a first heat exchanger through heat exchange with the first bottoms stream and the first overhead stream…." *Id.* Col. 24, ll. 1-7. Charis's systems outlined and provided to Targa in response to Targa's requests for bids for the Buffalo and Greenwood projects do not, in any iteration, cool separated feed streams upstream of the first fractionating column. Additionally, Charis's system includes only two fractionating columns; Charis's proposed system only includes two fractionating columns. Because Charis's proposed solution to Targa does not include these (and other features required to meet the limitations of the claims of the '355 Patent) it cannot infringe any claim of the '355 Patent.

63.     Defendants have weaponized their patents with unfounded and baseless infringement accusations made not only to Charis, but third-party Targa, in a successful effort to undermine Charis's contractual relationship with Targa.

64.     Charis's NRU project bid to Targa does not, nor would it have upon completion, infringe, either directly or indirectly, any valid and enforceable claim of the '355 Patent; it is not the case that each and every limitation of the claims of the '355 Patent are present directly and/or indirectly, either literally or under the doctrine of equivalents, in the proposed Charis NRU systems.

65.     Charis is entitled to a judgment from this Court that it does not infringe any claim of the '355 Patent.

## CLAIM VII – DECLARATORY JUDGMENT NON-INFRINGEMENT OF U.S. PATENT NO. 11,378,333

66.    The allegations set forth in paragraphs 1 – 65 and the Summary of Action are incorporated into the foregoing.

67.    As a result of the allegations contained above regarding communications between Defendants and Targa, as well as the accusations by Defendants in their April 19, 2023, letter to Charis alleging infringement, an actual and justiciable controversy exists between Defendants and Charis concerning infringement of the '333 Patent.

68.    Representative claim 1 of the '333 Patent recites, in part:

> I claim:
>   1. A system for removing nitrogen and for producing a methane product stream from a feed stream comprising nitrogen, methane, and other components, the system comprising:
>   a first separator wherein the feed stream is separated into a first separator overhead stream and a first separator bottoms stream;
>   a first splitter for splitting the first separator overhead stream into a first portion and a second portion;
>   a first fractionating column wherein the first and second portions of the first separator overhead stream are separated into a first column overhead stream and a first column bottoms stream;
>   a second splitter for splitting the first column bottoms stream into four portions;
>   a second fractionating column wherein the first column overhead stream is separated into a second column overhead stream and a second column bottoms stream;
>   a second separator wherein the second column bottoms stream and a fourth portion of the first column bottoms stream are separated into a second separator overhead stream and a second separator bottoms stream;
>   a first mixer to mix the second separator bottoms stream and a third portion of the first column bottoms stream to form a first mixed stream;



The '333 Patent (**Exhibit 5**), Col. 18, ll. 42-67.

69.    Claim 1 is not the only independent system claim of the '355 Patent. Claim 17 also requires "separating the feed stream into a first separator overhead stream and a first separator bottoms stream in a first separator," and "dividing the first separator overhead stream into a first portion and a second portion in a first splitter…." *Id.* Col. 21, ll. 28-32. Charis's systems outlined and provided to Targa in response to Targa's requests for bids for the Buffalo and Greenwood projects do not, in any iteration, perform the highlighted limitations of claim 1 shown above, including functionality to split a first feed stream into second and third feed streams, much less separate the feed stream into a first separator overhead stream that is then divided into a first portion and a second portion in a first splitter." Because Charis's proposed solution to Targa does not include these (and other features required to meet the limitations of the claims of the '355 Patent) it cannot infringe any claim of the '355 Patent.

70.    Defendants have weaponized their patents with unfounded and baseless infringement accusations made not only to Charis, but third-party Targa, in a successful effort to undermine Charis's contractual relationship with Targa.

71.    Charis's NRU project bid to Targa does not, nor would it have upon completion, infringe, either directly or indirectly, any valid and enforceable claim of the '355 Patent; it is not the case that each and every limitation of the claims of the '355 Patent are present directly and/or indirectly, either literally or under the doctrine of equivalents, in the proposed Charis NRU systems.

72.    Charis is entitled to a judgment from this Court that it does not infringe any claim of the '355 Patent.

## **PRAYER**

For the foregoing reasons and circumstances, created wholly by the conduct of Defendants, Plaintiff respectfully requests that the Court enter judgment against Defendants for all of the following:

a)    Unfair competition based on its false and misleading representations to Targa;

b)    Tortious interference with Charis contractual relationship with Targa;

c)    Business disparagement;

d)    Non-misappropriation of any valid trade secret owned by Defendants;

e)    Non-infringement of the '752 Patent;

f)    Non-infringement of the '355 Patent;

g)    Non-infringement of the '333 Patent;

h)    Damages for Charis's affirmative claims, including for unfair competition a disgorgement of Defendants' profits, or at a minimum the amount Charis was actually damaged by virtue of Defendants' unfair competition, tortious interference, and business disparagement;

i)    The case is exceptional, and an award of Charis's costs and reasonable attorneys' fees for bringing this action;

j)    A Declaration that Charis has not misappropriated any trade secret or proprietary information from Defendants.

k)    Such other relief, both at law and in equity, as the Court deems just and right given the nature of Defendants' tortious, willful, malicious, and egregious actions.

Dated: June 12, 2023                    Respectfully submitted,

                                        */s/ Decker A. Cammack*
                                        Decker A. Cammack (Lead Counsel)
                                        Texas Bar No. 24036311
                                        dcammack@whitakerchalk.com

                                        Brian J. Smith
                                        Texas Bar No. 24079353
                                        bsmith@whitakerchalk.com

                                        Thomas F. Harkins, Jr.
                                        Texas Bar No. 09000990
                                        tharkins@whitakerchalk.com

                                        **WHITAKER CHALK SWINDLE
                                          & SCHWARTZ PLLC**
                                        301 Commerce Street, Suite 3500
                                        Fort Worth, Texas 76102
                                        Phone: (817) 878-0500
                                        Fax: (817) 878-0501


                                        Randall L. Rouse
                                        Texas Bar No. 17324300
                                        Email:  rrouse@lcalawfirm.com

                                        **LYNCH, CHAPPELL & ALSUP, PC**
                                        300 N Marienfeld, Suite 700
                                        Midland, TX 79701
                                        Tel. (432) 683-3351
                                        Fax. (432) 684-6461